# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| CHARLES R., | Case No. CV 19-07033-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

## I.    INTRODUCTION

Charles R. ("Plaintiff") applied for Supplemental Security Income on July 21, 2016, alleging disability beginning August 16, 2001. See Dkt. 19, Administrative Record ("AR") 138-47.[2] After being denied initially, see AR 101-04, and on reconsideration, see AR 108-12, Plaintiff requested and

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. All citations to the administrative record are to the record pagination. All other citations are to the CM/ECF pagination.

received a hearing before an Administrative Law Judge ("ALJ") on March 26, 2018, see AR 53-77.

The ALJ issued an unfavorable decision on July 10, 2018. See AR 38-52. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. See AR 43. At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease, lumbar spine, status post lumbar fusion; affective disorder; anxiety disorder; posttraumatic stress disorder; substance abuse disorder in remission." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. See AR 44-45. At step four, the ALJ found that Plaintiff had no past relevant work. See AR 47. At step five, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as hand packager (DOT 559.687-074), small products assembler (DOT 706.684-022), and office helper (DOT 229.567-010). See AR 47-48. Accordingly, the ALJ denied benefits. See AR 48.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only when the ALJ decision is "based on legal error or not supported by substantial evidence in the record." Benton ex rel. Benton v. Barnhart, 331 F.3d 1030,

1035 (9th Cir. 2003). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted).

## III.   DISCUSSION

The parties dispute whether the ALJ erred in assessing Plaintiff's subjective symptom testimony. See Dkt. 20, Joint Stipulation ("JS") at 3.

## A.   Plaintiff's Testimony

Plaintiff testified as follows. In 1996, he was hit by a car and ruptured two discs in his neck, which were then fused together. See AR 57. In 2001, he suffered a work injury to his lumbar spine for which surgery was required. See AR 57-58. The back surgery helped "minimally." AR 58. Plaintiff's back is the main source of his pain, but his neck has also started to bother him. See id. Because Plaintiff was previously addicted to heroin and cocaine, he takes methadone for pain. See AR 58-59. He can sit for 20-30 minutes before his feet start to "burn" and go numb, stand for 15-20 minutes, and walk a few blocks before he feels weakness in his left leg. AR 59-61. Even lifting a bag of groceries hurts him. See AR 60-61. Plaintiff attends counseling, which helps with his depression and anxiety. See AR 62-63. Even with counseling, sometimes his depression is so bad that he cannot get out of bed or function. See AR 63-64.

Plaintiff saw a neurosurgeon in 2017, who told him that his pain was due to the severe ruptures seen on his MRI. See AR 68. The neurosurgeon said that if Baclofen (a muscle relaxant) did not help, the next step would be steroid injections, and then an L4-L5 fusion. See id. Plaintiff spends 3-4 hours a day in bed and often has trouble concentrating due to pain. See AR 70-71.

**B.**   <u>Applicable Law</u>

The ALJ must make two findings before finding the claimant's pain or symptom testimony not credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (citation and internal quotation marks omitted). Second, if the claimant has produced that evidence, and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" <u>Id.</u> at 1014-15 (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

**C.**   <u>Analysis</u>

The ALJ concluded that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 45. Specifically, the ALJ found that: (1) with respect to his physical complaints, Plaintiff was "generally well maintained on his medication regimen" and received "conservative treatment"; (2) with respect to his mental impairments, Plaintiff's testimony was inconsistent with his treatment history; and (3)

Plaintiff's statements generally were inconsistent with the objective medical evidence. Id.

### 1. Whether the ALJ Erred as a Matter of Law

At the outset, Plaintiff contends that the ALJ erred as a matter of law because the ALJ's first and third findings—that Plaintiff's physical complaints were well maintained with conservative treatment and that his testimony was inconsistent with the objective medical evidence—are "findings of fact, not reasons," that are not "specific, clear or convincing." JS at 14-16. To the extent Plaintiff suggests that evidence of minimal or conservative treatment is insufficient to discount a claimant's subjective symptom testimony, he is wrong. See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment.") (citation and internal quotation marks omitted); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) ("[Claimant's] response to conservative treatment undermines [his] reports regarding the disabling nature of his pain."). In fact, Plaintiff concedes that conservative care can be a proper basis for rejecting a claimant's subjective symptoms. See JS at 15 ("As to conservative care, that may under some facts, be an acceptable reason, it is not convincing under the factual array of this case."). Plaintiff's real issue appears to be whether substantial evidence supports the ALJ's reasoning, which is discussed below.

Next, Plaintiff argues that the ALJ erred as a matter of law by failing to identify the testimony that was not credible and explain what undermined that testimony. In support, Plaintiff relies on two Ninth Circuit cases, Treichler v. Comm'r of SSA, 775 F.3d 1090 (9th Cir. 2014), and Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015).

In Treichler, after summarizing the claimant's testimony, the ALJ stated that the claimant's "statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." 775 F.3d at 1097. The ALJ then moved on to the claimant's RFC without any further discussion. The Ninth Circuit found error and reversed: "[T]he ALJ stopped after this introductory remark. This was error and falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." Id. at 1103 (citing 42 U.S.C. § 405(b)(1)) (internal quotation marks omitted).

Similarly, in Brown-Hunter, after summarizing the claimant's testimony, treatments, and prescriptions, the ALJ stated that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." 806 F.3d at 491. After devoting the next eight paragraphs to summarizing the medical evidence in the record, the ALJ found that the claimant's limitations "were less serious than she has alleged" and "did not prevent her from engaging in all work related activities." Id. The Ninth Circuit found error and reversed: "[The ALJ] simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited." Id. at 494.

Here, the ALJ began with the same introductory boilerplate. But unlike Treichler and Brown-Hunter, the ALJ offered sufficiently specific reasons to reject Plaintiff's subjective symptom testimony. Namely, the ALJ noted that: (1) with respect to his physical complaints, Plaintiff was "generally well maintained on his medication regimen" and received "conservative treatment"; and (2) with respect to his mental impairments, Plaintiff's

testimony was inconsistent with his treatment history. AR 45. Both of these reasons are clear and convincing reasons to discount a plaintiff's subjective symptom testimony, if supported by substantial evidence. The ALJ therefore did not commit legal error and the Court considers whether the ALJ's credibility determination was supported by substantial evidence.

### 2.   Whether the ALJ's Credibility Finding was Supported by Substantial Evidence

The ALJ first discounted Plaintiff's subjective symptom testimony on the ground that he was "generally well maintained on his medication regimen" and his treatment providers responded to his complaints with "conservative treatment." AR 46. As noted above, not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. Tommasetti, 533 F.3d at 1039.

The ALJ's finding is supported by substantial evidence. The treatment records indicate that Plaintiff was stable on his methadone regimen. See AR 46, 332 ("Patient is stable on current medication regimen. No side effects reported. Patient reports that pain medications help reduce pain, perform [activities of daily living], and perform functional activities."), 335 (same), 344 (same). Significantly, in September 2016, Plaintiff reported that methadone was "working great" and he was staying active. AR 430 ("[Plaintiff] states methadone helps relief [sic] pain and states is working great. [Plaintiff] states he is staying active.").[3] This evidence contradicts Plaintiff's testimony that he was constantly in significant pain, to the point where he was forced to lie down for at least three to four hours a day. See AR 69.

Plaintiff responds that "stability and disability are not enemies." JS at 22.

---

[3] These treatment records span March to September 2016, undermining Plaintiff's claim that the ALJ took a "single report of pain relief out of the context of the record a whole." JS at 24.

That may be so; however, "[i]mpairments that can be controlled effectively with medication are not disabling." Warre v. Comm'r of SSA, 439 F.3d 1001, 1006 (9th Cir. 2006); see also Bettis v. Colvin, 649 F. App'x 390, 391 (9th Cir. 2016) (holding that ALJ appropriately discounted claimant's testimony on the ground that his "condition improved with treatment") (citation omitted). The record reflects that Plaintiff responded favorably to the use of prescription medication. Such a response, even if it did not eliminate his pain entirely, undermined his reports regarding the disabling nature of his pain. A different ALJ may have found Plaintiff more credible or weighed the evidence differently, but this Court "may not engage in second-guessing." Thomas, 278 F.3d at 959

The ALJ also discounted Plaintiff's testimony on the ground that he did not report to his treatment providers the symptoms he alleged at the hearing and was not taking medications for those symptoms. See AR 46. This finding, which Plaintiff does not contest in the briefing, is also supported by substantial evidence. At the hearing, Plaintiff testified that his depression often rendered him unable to function and that he had significant anxiety that manifested in panic attacks, at least one per week. See AR 63-64. Plaintiff also testified that his mental symptoms resulted in difficulty concentrating and interacting with the public. See AR 70. The mental health records, however, do not mention medication and generally reflect Plaintiff working on his anger, trauma and building relationships, not, as the ALJ put it, "frank mental symptoms." See, e.g., AR 475 ("Treatment Plan: [Plaintiff] will come to terms with his trauma and move forward with his life."), 476 (same, and noting that Plaintiff's condition was "fairly stable" and that his observed affect and mannerisms were "unremarkable"), 477 (same, and noting that Plaintiff was feeling "calmer"). As with his physical symptoms, the treatment records undermined Plaintiff's testimony regarding the disabling nature of his mental impairments.

Altogether, the ALJ proffered two permissible clear and convincing reasons in support of the adverse credibility finding. Accordingly, the Court need not and does not reach the ALJ's additional reason that Plaintiff's symptoms were not fully corroborated by the objective medical evidence.

## IV.   CONCLUSION

The decision is the Social Security Commissioner is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date:  September 14, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge